UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **WILLARD B. SIMMONS, JR.** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: _____ |
| | ) |
| **UNITED STATES ARMY CORPS OF ENGINEERS,** | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff, Willard B. Simmons, Jr. ("Simmons"), for his Complaint seeking declaratory and injunctive relief alleges as follows:

**INTRODUCTION**

1. In this action, Simmons seeks review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §551, *et seq.*, of a final agency action of the United States Army Corps of Engineers (the "Corps"), finding that certain property in which Simmons has an ownership interest ("Malbis Lake") is not a water of the United States under the Federal Water Pollution Control Act, 33 U.S.C. §1251, *et seq.*, known as the Clean Water Act ("CWA"), and, therefore, not subject to the Corps' jurisdiction.

2. As a result of the Corps' unlawful non-assertion of jurisdiction, Simmons is unable to use his property without fear of the Corps' prior determination allowing Infirmary Health System, Inc. ("Infirmary Health") to construct a vehicular roadway across Malbis Lake, together with fill material to be placed in portions of Malbis Lake, thereby causing flooding on Simmons' property and otherwise devaluing it.

3. Simmons seeks by this action a declaration that Malbis Lake is a water of the United States under the CWA. Simmons also seeks an injunction requiring the Corps to exercise jurisdiction over Malbis Lake.

4. The Court's review of the said agency action is based upon the administrative record before the Corps at the time the Corps made its decision.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §2201 (authorizing declaratory relief); 28 U.S.C. §2202 (authorizing further "necessary or proper relief"); and 5 U.S.C. §702 (providing for judicial review of agency action under the APA).

6. Malbis Lake consists of approximately eight (8) acres located in Baldwin County, Alabama. Simmons owns two (2) parcels contiguous to Malbis Lake containing approximately 4.73 acres, 0.06 acres of which includes Malbis Lake and 0.01 acres of which includes adjoining wetland. Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) because Malbis Lake is located within the judicial district.

## PARTIES

7. Simmons is a resident of Baldwin County, Alabama and owns a portion of Malbis Lake.

8. The Corps is a branch of the Department of the Army and an agency of the United States.

## LEGAL BACKGROUND

9. In 1972, Congress enacted the CWA to regulate "navigable waters."

10. Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the unpermitted discharge of dredged and fill material into "navigable waters."

11. Section 502(7) of the CWA, *id.* §1362(7), defines "navigable waters" to mean the "waters of the United States, including the territorial seas."

12. Section 404 of the CWA, 33 U.S.C. §1344, authorizes the Secretary of the Army, through the Corps, to issue permits for the discharge of dredged and fill material into "navigable waters."

13. By regulation, the Corps may determine whether a particular parcel of property contains "waters of the United States" by issuing an Approved Jurisdictional Determination ("AJD"). 33 C.F.R. §§320.1(a)(6), 331.2.

14. The Corps has promulgated regulations defining "waters of the United States." *Id.* §328.

15. Under those regulations, all of the following are considered "waters of the United States": (a) navigable waters, (b) interstate waters, (c) intrastate waters with uses that could affect interstate or foreign commerce, (d) impoundments of waters, (e) tributaries of waters that are relatively permanent, standing or continuously flowing bodies of water, (f) wetlands adjacent to relatively permanent, standing or continuously flowing bodies of water identified as impoundments or tributaries with a continuous surface connection to those waters, (g) territorial seas, and (h) intrastate lakes and ponds that are relatively permanent, standing or continuously flowing bodies of water with a continuous surface connection to waters identified as navigable, impoundments or tributaries. *See id.* §328.3.

16. In the consolidated cases cited as *Rapanos and Carabell v. United States*, 547 U.S. 715 (2006), Justice Scalia authored a plurality opinion, joined by three other Justices, which

concluded that the Corps' jurisdiction over non-navigable waters extends only to "relatively permanent, standing or continuously flowing bodies of water" that are "connected to traditional interstate navigable waters." *Id*. at 739, 742 (plurality opinion). In addition, a wetland adjacent to such jurisdictional waters will qualify as jurisdictional when "the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id*. at 742.

17. Following the decision in *Rapanos and Carabell*, the U. S. Environmental Protection Agency and the Department of the Army ("the Agencies") issued a memorandum dated December 2, 2008, hereinafter referred to as the "Pre-2015 Regulatory Regime", providing guidance to the Agencies to ensure that jurisdictional determinations, permitting actions and other relevant actions were consistent with the decision and supported by the administrative record.

18. The Pre-2015 Regulatory Regime identifies those waters over which the Agencies will assert jurisdiction categorically and on a case-by-case basis, based upon the reasoning of the *Rapanos and Carabell* opinion: (A) Waters over which the Agencies will assert jurisdiction are "Relatively Permanent Non-navigable Tributaries of Traditional Navigable Waters and Wetlands with a Continuous Surface Connection with Such Tributaries." A non-navigable tributary of a traditional navigable water is a non-navigable water body whose waters flow into a traditional navigable water either directly or indirectly by means of other tributaries. A tributary includes natural, man-altered, or man-made water bodies that carry flow directly or indirectly into a traditional navigable water. (B) Other waters over which the Agencies will assert jurisdiction are "Certain Adjacent Wetlands and Non-navigable Tributaries That are Not Relatively Permanent" where such tributaries and wetlands have a significant nexus to a traditional navigable water. A significant nexus analysis will assess flow characteristics and functions of the tributary itself and

functions performed by any wetlands adjacent to the tributary. Significant nexus includes consideration of hydrologic and ecologic factors.

18. On August 29, 2023, the Agencies issued a final rule to conform the definition of "waters of the United States" to *Sackett v. Environmental Protection Agency*, 598 U.S. 651 (2023). In *Sackett,* the Court "concluded that the *Rapanos* plurality was correct: the CWA's use of "waters" encompasses only those relatively permanent, standing or continuous flowing bodies of water "forming geographical features" that are described in ordinary parlance as "streams, oceans, rivers and lakes." The Court also "agreed with the plurality's formation of when wetlands are part of 'the waters of the United States", specifically when wetlands have a continuous surface connection to bodies that are "waters of the United States" in their own right, so that there is no clear demarcation between "waters" and "wetlands." The Court concluded that the significant nexus standard is inconsistent with the CWA.

19. Due to ongoing litigation, the Agencies are interpreting "waters of the United States" consistent with the Pre-2015 Regulatory Regime and the *Sackett* decision. That litigation (including district courts in Texas and North Dakota, and the Sixth Circuit Court of Appeals orders) resulted in orders preliminarily enjoining 27 States (including Alabama) from enforcing the January 2023 Rule.

20. On February 7, 2024, the Agencies issued the Memorandum on Evaluating Jurisdiction For LRL-2023-00466 to clarify when ponds are considered part of the tributary network and not affected by the decision in *Sackett*. Therefore, ponds can be evaluated as Paragraph (a)(5) Tributaries when they are part of the Tributary Network.

## FACTUAL ALLEGATIONS

### A.    The Property

21. Malbis Lake is a relatively permanent water body as it holds water year-round.

22. Malbis Lake and its wetlands are part of a surface tributary system with a continuous surface connection to D'Olive Creek. D'Olive Creek is a Relatively Permanent Non-navigable Tributary of a Traditional Navigable Water (Mobile Bay).

23. Before a concrete dam structure was emplaced impounding flow at the southern side of Highway 90, there was a continuous hydrological surface connection along D'Olive Creek to Mobile Bay.

24. Discharge from the Malbis Lake dam structure flows to the undisturbed portion of D'Olive Creek on the north side of Woodrow Lane when the lake water surface elevation exceeds the outlet structure invert elevation. Between Malbis Lake and Woodrow Lane, flow from Malbis Lake has been routed through culverts, ponds, drainage structures and flumes, providing a continuous surface connection to D'Olive Creek, a Relatively Permanent Non-navigable tributary of a Traditional Navigable Water (Mobile Bay).

### B.    Prior Administrative Proceedings Before The Corps
### When Evaluating Malbis Lake and Its Connection to D'Olive Creek

**Aronov Realty Management, Inc. Site**

25. On May 16, 2005, the Corps issued a Nationwide Permit Authorization to Discharge Fill Material for Commercial Development in Malbis, Alabama – Jurisdictional File Number ALNW05-00462-S to Aronov Realty Management, Inc., involving lands between Interstate 10 and Highway 90. That said Permit is attached as **Exhibit A**.

26. The Corps Project Manager's handwritten notes in evaluating the Aronov Realty Management. Inc. Nationwide Permit Authorization are attached as **Exhibit B**. This Permit allowed Aronov to reroute the D'Olive Creek channel into a stormwater management system, while maintaining the hydrologic surface connection between Malbis Lake and D'Olive Creek.

### Infirmary Health Systems, Inc. Site

27. On April 24, 2020, Thompson Engineering issued a Property Assessment to <u>its client, Infirmary Health</u>. The assessment included a survey of wetlands, streams and terrestrial endangered species at Malbis Medical, Lot 2, City of Daphne, Baldwin County, Alabama, which includes Malbis Lake. This assessment is attached as **Exhibit C.** The report states, *inter alia*, that "[a]ccording to topographical and hydrological information, there is a blue line stream segment that runs through the site and is a tributary to D'Olive Creek."

28. On November 6, 2020, the Corps issued an Approved Jurisdictional Determination, File Number SAM-2020-00809-ES, to Infirmary Health ("the Infirmary Health AJD"). The review area contained 6.5 acres, involving Malbis Lake, and the Corps determined the review area nevertheless contained isolated, non-jurisdictional open waters and wetlands. The Infirmary Health AJD is attached as **Exhibit D**.

29. However, the Corps did not recognize the presence of a design feature known as a <u>Water Quality Watermann located in the northern detention pond between Highway 90 and Interstate 10</u> which feature allowed water to continually infiltrate to D'Olive Creek. The basis for the Infirmary Health AJD does not conform to the CWA and Regulations adopted pursuant thereto.

### C. Current Administrative Proceeding Before the Corps and Simmons' Exhaustion of his Administrative Remedies

30. On December 13, 2022, JAGET, Inc., d/b/a Wetland Resources Environmental Consulting ("Wetland Resources") applied to the Corps for an Approved Jurisdictional Determination for Simmons for Malbis Lake, and notified the Corps that Infirmary Health was proposing to fill portions of Malbis Lake. That application/notification is attached hereto as **Exhibit E**.

31. The Wetland Resources application contained an exhaustive statement in support of its application.

32. On September 7, 2023, Donald & Estep, LLC, on behalf of its client, Simmons delivered a letter to the Corps with new information further warranting revision of the Infirmary Health AJD and providing information that would assist the Corps in its consideration of the request for an AJD for Simmons.

33. While Simmons' application was pending, on November 3, 2023, Simmons filed a Complaint for Declaratory and Injunctive Relief and Petition for Judicial Review in the United States District Court for the Southern District of Alabama, Civil Action No. 23-00412-KD-MU, requesting the Court to set aside the Infirmary Health AJD, ordering the Corps to issue a new AJD in accordance with applicable law, and enjoining Infirmary Health from discharging fill into Malbis Lake except in accordance with a newly issued AJD.

34. On December 16, 2023, Wetland Resources sent the Corps an engineering drawing obtained from the City of Daphne showing a design feature known as a Water Quality Watermann that allows water to continuously infiltrate the bottom of the northern detention pond where it is directed to a pipe that runs generally north and empties directly into the D'Olive Creek channel on

the north side of Woodrow Lane. Also included was a more detailed description and discussion of how this structure is designed to function prepared by professional engineer, Kenneth D. Underwood, P.E. A copy of that description and discussion is attached as **Exhibit F**.

35. On February 6, 2024, the Corps issued an Approved Jurisdictional Determination to Willard B. Simmons, Jr. (the "Simmons AJD") for Malbis Lake. The Corps determined that Malbis Lake was not an impoundment of a jurisdictional water because there was no dam at the north end of Malbis Lake, and as such, evaluated Malbis Lake as a potential (a)(3) water (other waters). According to the Corps, it appeared as though Malbis Lake was isolated because the series of stormwater ponds to the north of Highway 90 did not provide for a direct connection to D'Olive Creek. Attached is the Simmons ADJ as **Exhibit G**.

36. On February 17, 2024, Mr. Underwood issued his findings, photos and conclusion regarding the Malbis Lake Dam Structure. Mr. Underwood stated that "Storm water from the upper portion of the D'Olive Creek watershed flows to Malbis Lake where impoundment occurs in this man-made lake. The dam is a concrete facility forming the north end of the lake." Discharge from the Malbis Lake dam structure flows to the undisturbed portions of D'Olive Creek on the north side of Woodrow Lane when the lake water surface elevation exceeds the outlet structure invert elevation. Between Malbis Lake and Woodrow Lane the creek has been routed through culverts, ponds, drainage structures and flumes. Attached as **Exhibit H** is this report.

37. On March 7, 2024, the District Court for the Southern District of Alabama dismissed <u>without prejudice</u> the lawsuit filed by Simmons against Infirmary Health and the Corps.

38. On March 5, 2024, Simmons notified the Corps' South Atlantic Division Office of an Administrative Appeal Options and Process and Request for Appeal ("Administrative Appeal") of the Simmons AJD. Attached as **Exhibit I** is the Administrative Appeal.

9

39. On March 20, 2024, the <u>Corps' South Atlantic Division Regulatory Appeal Review Officer</u> ("Review Officer") informed Simmons that his Request for Appeal contained acceptable reasons for appeal. Attached as **Exhibit J** is this Notice.

40. On May 17, 2024, the Review Officer conducted an appeal meeting in Daphne, Alabama and a site visit. On June 10, 2024, the Review Officer issued a Memorandum for Record regarding the appeal meeting, which is attached as **Exhibit K**.

41. On December 11, 2024, the Chief of the Operations and Regulatory Division, For the Commander, South Atlantic Division, issued the Administrative Appeal Decision ("Appeal Decision), which is attached as **Exhibit L**. In summary, the <u>Appeal Decision found that Simmons' appeal had merit and remanded the Simmons AJD to the District with specific instructions to reevaluate its observations and conclusions relative to the jurisdictional status of the aquatic feature as Malbis Lake in accordance with current regulation, policy, and guidance in place at the time of the reconsideration</u>.

42. Despite the remand and admonishment, on March 5, 2025, the Corps issued its "updated" AJD Memorandum for Record (MFR) ("Simmons Revised AJD"), in which it did not change its ultimate finding that Malbis Lake was not jurisdictional. This Revised ADJ is attached as **Exhibit M**.

43. In developing the Simmons Revised AJD, the Corps failed to consider numerous other tools and resources and likewise made <u>no</u> attempt to reconcile its findings here with findings already in the Aronov, the Infirmary Health files, and the original Simmons AJD. Frankly, the Corps is all over the place on key issues. In short, the Corps' failure is an abdication of its responsibilities under the CWA.

**Applicable Tests for Exercise of Jurisdiction Under the CWA**

44. The controlling tests for defining Relatively Permanent Non-navigable Tributaries of Traditional Navigable Waters and Wetlands with a Continuous Surface Connection with Such Tributaries are the Pre-2015 Regulatory Regime definitions, not affected by the *Sackett* decision in which the Supreme Court concluded the significant nexus standard was inconsistent with the CWA.

45. The Simmons Revised AJD does not follow the applicable definitions and tests for assertion of jurisdiction under the CWA, as it should.

46. First, the Simmons Revised AJD incorrectly states that the Corps cannot definitively conclude that Malbis Lake was created from a water of the United States based only upon aerial photography beginning in 1938 following the creation of Malbis Lake, which, historically, was carved out of a section of D'Olive Creek prior to 1938.

47. Second, the Simmons Revised AJD incorrectly requires Malbis Lake to contribute a relatively permanent flow downstream, when the Pre-2015 Regulatory Regime only requires a relatively permanent water body that typically (*e.g.* except due to drought) flows year-round or waters that have a continuous flow at least seasonally (*e.g.* typically three months).

48. Third, the Simmons Revised AJD did not fully consider the Corps' earlier findings in the 2005 Nationwide Permit and 2020 Infirmary Health AJD, both of which considered Malbis Lake a part of the D'Olive Creek tributary system.

49. Fourth, the Simmons Revised AJD failed to fully evaluate Malbis Lake as a potential (a)(5) Intrastate lakes and ponds not identified in paragraphs (a)(1) through (4) of this section that are relatively permanent, standing or continuously flowing bodies of water with a continuous surface connection to the waters in paragraph (a)(1) or (a)(3) of this section. 33 C.F.R.

§328.3 Definitions, amended September 8, 2023, and USEPA and OASACW Memorandum on Evaluating Jurisdiction for LRL-2023-00466, February 7, 2024.

50. There is existing substantial evidence to support that Malbis Lake, being a part of the D'Olive Creek tributary system, is a water of the United States.

51. Simmons' ownership of a portion of Malbis Lake is subject to the CWA, as is the entire feature of Malbis Lake because it contains a "waters of the United States." Therefore, the Simmons Revised AJD is arbitrary and capricious, contrary to law, and unsupported by substantial evidence. See 5 U.S.C. 706

### First Claim for Relief – Declaratory Judgment

52. Simmons hereby realleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

53. An actual and substantial controversy exists between Simmons and the Corps over the Corps' failure to comply with the CWA in determining that Simmons' property does not contain a jurisdictional waterbody.

54. Malbis Lake contains jurisdictional waterbodies, whereas the Corps, through its Revised Simmons AJD, contends that it does not. The Corps has had over two years to develop information supporting its allegation of non-jurisdiction, there is a complete administrative record on which the Revised Simmons AJD was made, and any further administrative proceeding before the Corps would be futile. Therefore, no further factual development is necessary to resolve the legal issues raised by this action.

55. The Revised Simmons AJD is a final action subject to judicial review under the APA. See 5 U.S.C. §702; 33 C.F.R. §320.1(a)(b) and 331.10.

56. The case is currently justiciable because the Corps has unlawfully failed to assert jurisdiction over Simmons' property within Malbis Lake.

57. Simmons is currently and continuously injured by the Corps' unlawful refusal to exercise jurisdiction because the existence of the Simmons Revised AJD decreases the value of his property within Malbis Lake and adjoining Malbis Lake, and Simmons is unable to use his property without fear of the Corps' prior determination allowing Infirmary Health to construct a vehicular roadway across Malbis Lake, together with fill material being placed in portions of Malbis Lake, thereby causing flooding to Simmons' property.

58. Simmons is, therefore, entitled to a declaratory judgment declaring that the Simmons Revised AJD is invalid and that the Corps has jurisdiction over Malbis Lake pursuant to the CWA.

## Second Claim for Relief – Injunctive Relief

59. Simmons hereby realleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

60. Simmons is and will be directly affected and injured by the Corps' unlawful refusal to assert jurisdiction over Malbis Lake.

61. The Simmons Revised AJD imposes significant injury on Simmons by decreasing the value of his property within Malbis Lake and adjoining Malbis Lake, and Simmons is unable to use his property without fear of the Corps' prior determination allowing Infirmary Health to construct a vehicular roadway across Malbis Lake, together with fill materials being placed in portions of Malbis Lake, thereby causing flooding. Hence, the Corps' unlawful failure to exercise jurisdiction causes Simmons irreparable injury.

62. Setting aside the Revised Simmons AJD will redress Simmons' injuries by allowing Simmons to use and enjoy his property, both within and adjoining Malbis Lake.

63. Simmons has no plain, speedy and adequate remedy at law. Absent judicial intervention, Simmons will continue to suffer irreparable injury.

64. The Revised Simmons AJD is a final agency action subject to judicial review under the APA. See 5 U.S.C. §702; 33 C.F. §320.1(a)(b).

65. Accordingly, injunctive relief requiring the Corps to exercise jurisdiction under the CWA is appropriate.

**Prayer for Relief**

Wherefore, Simmons prays for judgment as follows:

1. A declaration that Simmons' property within Malbis Lake is subject to the CWA;

2. A declaration that the Revised Simmons Approved Jurisdictional Determination is invalid;

3. An injunction requiring the Corps to exercise jurisdiction over Malbis Lake;

4. An award of attorney's fees, to the extent allowed by law pursuant to 28 U.S.C. §2412(d)(1)(A), together with expenses, and costs; and

5. For any such other and further relief that the Court deems proper under the circumstances of this case.

Dated April 1, 2025.

Respectfully submitted,

By: /s/ Richard E. Davis
**Richard E. Davis – DAV046**
**Richard E. Davis – DAV189**
Attorneys for Plaintiff

OF COUNSEL:

**DAVIS, DAVIS & ASSOCIATES, P.C.**
P.O. Box 2925
Daphne, Alabama 36526
(251) 621-1555 (office)
(251) 621-1550 (fax)
rdavis@ddalawfirm.com
rick@ddalawfirm.com

**DEFENDANTS WILL BE SERVED BY REGISTERED MAIL AS FOLLOWS**:

ALLISON MONROE
Chief of the Regulatory Division,
Mobile District
U.S. Army Corps of Engineers
Post Office Box 2288
Mobile, Alabama 36628

U.S. ARMY CORPS OF ENGINEERS
441 G Street NW
Washington, DC 20310-0101

/s/ Richard E. Davis
OF COUNSEL